1

2

3

4

5

6

7

**FILED**
CLERK, U.S. DISTRICT COURT

Mar 19, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____PMC___ DEPUTY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,        )    Case No. CR 04-1594(B) SVW

12              Plaintiff,            )
                                     )    MEMORANDUM OF OPINION
13         v.                        )    REGARDING SENTENCING
                                     )
14   ALBERT ROBLES,                  )
                                     )
15              Defendant.           )
                                     )
16                                   )
                                     )
17   _____   )

18         A jury convicted Albert Robles on thirty counts of honest services fraud, money

19   laundering, and bribery stemming from his corrupt tenure as South Gate City's Treasurer.

20   *United States v. Garrido*, 713 F.3d 985, 989 (9th Cir. 2013).[1]  Subsequent development in the

21   law, however, forced the Ninth Circuit to reverse certain convictions, entitling Robles to a new

22   sentence.  The unusual facts of this case — namely, the extent of Robles's corruption no longer

23   captured by his surviving convictions — warrant an upward departure from the Guidelines

24   range.  The Court therefore imposed a sentence of 84 months imprisonment (the amount of time

25   Robles has served) and 3 years supervised release.  This memorandum fully explains the reasons

26   animating the sentence, which the Court set forth during the hearing on March 16, 2015.

27   _____

28   [1]   The relevant statutory provisions are 18 U.S.C. §§ 1341, 1343, 1346 (honest services mail and wire
           fraud),18 U.S.C. § 1957 (money laundering), and 18 U.S.C. § 666 (bribery).

**BACKGROUND**

Between 1999 and 2001, Robles took contributions from Michael Klistoff, the owner of Klistoff & Sons Waste Company. *Id.* at 990. Klistoff hoped to gain access to the city's waste-hauling contracts. *Id.* And when the city's contract became available in 2001, Klistoff told Robles's longtime friend George Garrido that he wanted it. *Id.*[2]

Before the city solicited proposals, Robles met with Klistoff and showed him the draft documents. *Id.* at 991. The draft proposal envisioned four companies providing different services, but Klistoff suggested that one company do it all. *Id.* Robles evidently agreed, and the final request called for a single company to haul all the city's waste. *Id.*

Klistoff & Sons submitted a bid. *Id.* Robles then tapped his friend, Louis Moret, as the city's bidding facilitator, telling him that Klistoff & Sons was his "horse in the race." *Id.* Still, Robles expressed concern to Moret that Klistoff might not be able to make a persuasive presentation to the contract selection committee. *Id.* So Moret recommended Ray Garubo as a consultant, whom Garrido soon after told Klistoff to hire. *Id.* Garubo became Klistoff's consultant, but Garrido paid Garubo's fees. *Id.*

Robles also provided Klistoff with other competitive advantages. He showed him the other bids, which were supposed to be confidential. *Id.* And he directed Moret to provide Garubo with the questions the committee would ask bidders, which were also supposed to be confidential. *Id.*

After all the bidders made oral presentations, the selection committee voted to negotiate only with Klistoff & Sons. *Id.* The city council approved the selection and awarded the $48 million contract to Klistoff's company. *Id.*

The government filed its original indictment in November 2004. *Id.* at 992. Robles proceeded to trial some time later under a second superseding indictment alleging twenty-one counts of honest services mail and wire fraud, four counts of money laundering, and five counts

---

[2]   There was evidence of corruption beyond the waste-services contract. *Garrido*, 713 F.3d at 989-90. Since the surviving convictions do not encompass this conduct, the Court does not recount it here. That conduct, however, is still relevant to the Court's evaluation of 18 U.S.C. § 3553(a)'s factors, which is discussed *infra*.

2

1   of bribery.  *Id.*  The indictment and jury instructions permitted the jury to convict Robles of

2   honest services fraud under two different theories: (1) bribery and kickbacks or (2) failing to

3   disclose conflicts of interests.  *Id.* at 995-97.  And the government's case rested on both,

4   although the prosecutor emphasized Robles's undisclosed conflicts in his closing arguments.  *Id.*

5   at 996-97.  The jury convicted Robles on all charges.  *Id.* at 992.  The Court sentenced him to ten

6   years imprisonment.  *Id.*  Robles then appealed.  *Id.*

7        During the pendency of Robles's appeal, the Supreme Court decided *United States v.*

8   *Skilling*, 561 U.S. 358 (2009).  Before then, honest services fraud could be based on either

9   bribery or undisclosed conflicts of interest.  *Garrido*, 713 F.3d at 993; *United States v. Kincaid-*

10  *Chauncey*, 556 F.3d 923, 942 (9th Cir. 2009).  *Skilling* changed that: honest services fraud only

11  encompassed bribery and kickback schemes, the Supreme Court said, not failures to disclose

12  conflicts of interest.  558 U.S. at 409-12; *Garrido*, 713 F.3d at 993-94.

13       This intervening change in the law rendered the Court's jury instructions erroneous.

14  *Garrido*, 713 F.3d at 994-95.  Even though there was "evidence in the record that could support

15  a bribery or kickback conviction," the gravamen of the indictment, instructions, and

16  prosecution's arguments was the nondisclosure theory, making it "impossible to conclude that

17  the jury convicted Robles . . . based on [his] participation in either a bribery or kickback scheme

18  instead of based on *Skilling*'s unconstitutional failure to disclose a conflict of interest."  *Id.* at

19  996-97.  The Ninth Circuit consequently reversed Robles's honest services fraud convictions.

20  *Id.* at 998.[3]

21       The Ninth Circuit upheld Robles's bribery convictions though.  *Id.* at 1002.  In doing so,

22  the Ninth Circuit pointed to the ample evidence supporting the jury's verdict:

23       Robles showed Klistoff a draft request for the proposals for the contract, and . . . the

24       final request for proposals incorporated Klistoff's suggestion . . . .  Robles assigned

25       his friend Moret to work as facilitator for the bidding process . . . .  Robles further

26

27

28   [3]   The Ninth Circuit also reversed two honest services fraud counts against Robles for insufficient
         evidence.  *Garrido*, 713 F.3d at 998.  The Ninth Circuit further reversed the money laundering
         counts that were derivative of the honest services fraud convictions.  *Id.* at 998-99.

instructed Moret that his "horse in the race" was Klistoff & Sons.  During the
selection process, Robles communicated with Moret frequently and Moret told
Robles information that was not available to the public.  Robles requested that Moret
recommend a consultant to assist Klistoff & Sons in its presentation for the bid, but
he did not request assistance for any bidders.   Klistoff & Sons hired the
recommended consultant.  Robles showed Klistoff the other companies' competing
bids . . . .  Moret provided Robles and Klistoff & Son's consultant with confidential
questions . . . .

*Id.* at 1000.  The Ninth Circuit then rejected Robles's other legal argument, *id.* at 1000-02, and
remanded the case for further proceedings consistent with its opinion, *id.* at 1002.

The government declined to retry Robles for honest services fraud due to the age of the
case and the time Robles already served.  Gov't's Sentencing Position, 1:24-28, ECF No. 418.

**LEGAL STANDARD**

The reversal of Robles's honest services fraud convictions unbundled the Court's prior
sentence.  *See United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000).  Since the
Ninth Circuit's remand was unlimited, the Court must repackage a de novo sentence in light of
the entire record.  *See United States v. Matthews*, 278 F.3d 880, 885-86 (9th Cir. 2002); *United
States v. Garcia-Guizar*, 234 F.3d 483, 490-91 (9th Cir. 2000); *United States v. Barron*, 172 F.3d
1153, 1160 (9th Cir. 1999) (en banc); *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir. 1995)
(per curiam).  Consequently, the Court must calculate Robles's Sentencing Guidelines range,
consider the range, assess the factors outlined in 18 U.S.C. § 3553(a), arrive at an appropriate
sentence, and explain the reasons for imposing the chosen sentence.  *United States v. Blinkinsop*,
606 F.3d 1110, 1114 (9th Cir. 2010).  The Court cannot presume the Guidelines range is
reasonable.  *Id.*  And although the Court may exercise its discretion in tailoring a sentence, the
ultimate punishment must be reasonable.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  As a
general rule, the Court uses a preponderance of the evidence standard when making factual
findings.  *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005).

**ANALYSIS**

4

## I.     The Guidelines Range

### A.     Criminal History

Since the Court considers Robles's sentence upon an open record, it is not temporally circumscribed to the facts as they existed at the original sentencing hearing. *See, e.g.*, *Ponce*, 51 F.3d at 826.  And a de novo sentence includes a recalculation of Robles's criminal history in light of all relevant evidence. *See id.*; *United States v. Romano*, 749 F. Supp. 53, 57 (D. Conn. 1990) *aff'd*, 937 F.2d 54 (2d Cir. 1991).

Robles has three criminal convictions.  He spent ten days in jail for a vehicle code violation in 1986.  The age of this conviction, however, renders it irrelevant to Robles's criminal history score. U.S. Sentencing Guidelines Manual § 4A1.2(e)(3) (2000) [hereinafter USSG].[4] Robles was sentenced to four years probation for a penal code violation in 2002, which equates to one criminal history point.  USSG §§ 4A1.1(c), 4A1.2(e)(2).  Last, Robles's conviction for failing to identify information in mass mailings — which were a product of the same corruption underlying his federal convictions — results in two additional points.  USSG §§ 4A1.1(b), 4A1.2(e)(2).  Three criminal history points place Robles in criminal history category II.  USSG § 5A.

A court may impose a downward variance where the defendant's criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."  USSG § 4A1.3.  The Probation Department submits (and Robles does not object) that this case warrants such a departure.  In essence, they contend that Robles had not incurred this conviction at the time of the original sentencing, so its inclusion would repunish him for the same conduct.  But Robles "has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."  *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987).  The Court must consider the full record as it

---

[4]     The Court uses the 2000 version of the United States Sentencing Guidelines Manual pursuant to Section 1B1.11(b)(1) of the current Guidelines Manual.  *See* U.S. Sentencing Guidelines Manual § 1B1.11(b)(1) (2014).

1    currently stands.  *Ponce*, 51 F.3d at 826; *see also United States v. Montalvo-Rodriguez*, 540 F.

2    App'x 339, 340-41 (5th Cir. 2013) (per curiam); *United States v. Allen*, 153 F.3d 1037, 1043 (9th

3    Cir. 1998).  And neither Robles nor the Probation Department have pointed to any evidence that

4    Robles's criminal conduct was more innocuous than his past convictions suggest.  *See United*

5    *States v. Sablan*, 469 F. App'x 601, 603 (9th Cir. 2012).  Thus, the Court has no reason to

6    conclude that classifying Robles as a category II offender significantly over-represents the

7    seriousness of his criminal history.

8         **B.    Offense Level**

9         All parties agree that Robles's base offense level is 10.  *See* USSG § 2C1.1.  The

10   question is how far the Court should adjust the base level.

11        1.    Organizer or Leader

12        A defendant's offense level is increased by four points if he was an organizer or leader of

13   a criminal activity involving more than five participants.  USSG § 3B1.1(a).  Courts add two

14   points if the scheme involved less than five people and is not "otherwise extensive."  USSG §

15   3B1.1(c).  The Probation Department and Robles contend that the initial bases for the organizer

16   or leader enhancement were his honest services fraud convictions, which no longer exist.  The

17   government contends that there is sufficient evidence of Robles's organization and leadership

18   role in the bribery scheme.

19        Robles participated in an organized bribery scheme: as the Ninth Circuit recounted, there

20   was "ample evidence that Robles accepted Bribes from Klistoff with the intention to be

21   influenced in connection with the waste-hauling contract."  *Garrido*, 713 F.3d at 1000.  Indeed,

22   Robles "used his considerable influence exclusively for Klistoff's benefit" directly and indirectly

23   — personally providing him with confidential information and dispatching his cronies to help

24   Klistoff & Sons secure the contract.  *Id.*

25        The first question, therefore, is whether the preponderance of evidence shows that Robles

26   was an organizer or leader.  The Sentencing Guidelines direct courts to consider the defendant's

27   decision-making authority, the nature of his participation, the recruitment of accomplices, the

28   claimed right to a larger share of the crime's fruits, the degree of planning or organization

undertaken by the defendant, the nature and scope of the illegal activity, and the degree of control and authority wielded by the defendant.  USSG § 3B1.1 app. n.4; *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998); *see also United States v. Brown*, 771 F.3d 1149, 1158-59 (9th Cir. 2014) (requiring a finding that the defendant exercised some degree of control or organizational authority over others).

Robles was an organizer and leader under this definition.  Robles was a direct participant in the scheme.  *Garrido*, 713 F.3d at 1000 ("Robles showed Klistoff a draft request for the proposals for the contract. . . .  Robles showed Klistoff the other companies' competing bids."). He directed others to perform certain functions.  *Id.* ("Robles assigned his friend Moret to work as facilitator for the bidding process . . . .  Robles requested that Moret recommend a consultant to assist Klistoff & Sons.").  He vicariously recruited Garubo.  *Id.* ("Robles requested that Moret recommend a consultant to assist Klistoff & Sons . . . .  Klistoff & Sons hired [Moret's] recommended consultant.").  And he constantly coordinated with his cronies.  *E.g.*, *id.* ("Robles communicated with Moret frequently.").  Moreover, Robles was the one occupying office — the one with influence over the contract — and thus the indispensable cog in the bribery scheme. *See id.* at 989-990 ("Robles was Treasurer of the City of South Gate, California. . . .  Klistoff agreed to make these contributions [to Robles's campaign] because he knew Robles had influence in South Gate and Klistoff was hoping to gain access to future waste-hauling contracts.").

The second component of this enhancement examines the number of participants.  *See* USSG § 3B1.1.  Under this enhancement, a participant is a person who is criminally responsible — *i.e.*, an aider and abettor, a co-conspirator, or the like — regardless of whether he or she was convicted.  USSG § 3B1.1(a) app. n.1.

According to the government, Robles's scheme included five people.  Robles was the leader.  Klistoff offered the bribes.  *Garrido*, 713 F.3d at 990-91.  Moret was Robles's appointed facilitator, channeling information and assistance to Klistoff.  *Id.*  Garubo served as Klistoff's consultant.  *Id.*  And Garribo paid Garubo's salary while serving as a conduit between Robles and Klistoff.  *Id.*

Although each person participated in the scheme, there is insufficient evidence that Garubo was criminally responsible. To be an aider and abettor, a person must knowingly and intentionally aid and abet the principles in each essential element of the crime. *United States v. Bancalari*, 110 F.3d 1425, 1429 (9th Cir. 1997); *see also* 18 U.S.C. § 2. There is not enough evidence that Garubo knowingly and intentionally aided Robles in his bribery scheme. *See* 18 U.S.C. §§ 2, 666. Garubo took money from Garrido to consult for Klistoff & Sons, and he received confidential information that other bidders were not privy to. *Garrido*, 713 F.3d at 991, 1000. But there is no evidence that Garubo consulted in order to further Robles's plan. Garrido was also Klistoff's consultant, *Garrido*, 713 F.3d at 900, so Garubo may not have thought it odd to receive payment from him. And receiving confidential information through Moret is not enough to show Garubo was aware of and intended to aid Robles's corrupt scheme.[5]

Thus, Robles is not subject to the full Section 3B1.1(a) enhancement. Rather, he was the organizer and leader of a four-person scheme, which is subject to a two-level adjustment. USSG § 3B1.1(c).

### 2. Loss Calculation

#### a. Clear & Convincing Standard

Although the preponderance of the evidence standard is generally appropriate, courts may apply a clear and convincing standard when the enhancement would have "an extremely disproportionate" effect on the sentence. *United States v. Hopper*, 177 F.3d 824, 733 (9th Cir. 1999). There is no rigid test for determining whether an adjustment's effect is extremely disproportionate. *See Dare*, 425 F.3d at 342. Rather, courts must consider several indicia:

(1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create

---

[5] There is also insufficient evidence that the bribery scheme was "otherwise extensive" because there is no evidence that Robles employed several others in his scheme. *See* USSG § 3B1.1(a) & app. n.3.

8

new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Id.* (citing *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001)).

Here, the loss enhancement could have a significant impact.  If the government prevails in imposing a thirteen level enhancement, Robles's Guidelines range would more than triple. *See* USSG § 5A.  Without any loss enhancement, Robles faces a Guidelines range of 12-18 months imprisonment.  With the government's proposed thirteen level increase, the guidelines sentence jumps to 63-78 months.  Thus, the loss calculation in this case is the primary driver behind the Guidelines range — more than doubling the offense level and tripling the suggested sentence — and a clear and convincing standard ought to apply.[6]

### b.    Amount of Loss

Since Robles's offense involved receiving bribes, his Guidelines range is subject to further enhancement based on the pecuniary loss associated with his crime.  *See* USSG § 2C1.1(b)(2).  The loss is the greatest among "the value of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense."  *Id.* Although the Court may not consider the benefit to an unrelated third party, the benefit need not flow directly to the defendant.  *United States v. Gillam*, 167 F.3d 1273, 1279 (9th Cir. 1999).  So for example, the amount assessed against a defendant who swayed a civil jury is the verdict's amount, not the bribe received.  *United States v. Muhammad*, 120 F.3d 688, 700 (7th Cir. 1997).

---

[6]    In *United States v. Armstead*, the Ninth Circuit found that a loss enhancement did not warrant the clear and convincing standard because it was based on the criminal activity the jury convicted the defendant upon.  552 F.3d 769, 777-78 (9th Cir. 2008).  The adjustment implicated in *Armstead*, however, was less disproportionate to the overall sentence, and the Ninth Circuit analyzed the issue through the lens of plain error.  *Id.*  In this case, the enhancement is more central than Robles's underlying offense — indeed, more important than the sum of all other sentencing factors combined — so *Armstead* does not control.

9

1   The amount assessed against government inspectors who smuggled prohibited products would be

2   the importers' profits, not the amount of the bribes. *Gillam*, 167 F.3d at 1275-76, 1278-79.

3       The benefit received was the value provided to Klistoff deriving from the bribes paid to

4   Garrido. *See* USSG § 2C1.1 app. n.2 ("The value . . . means the *net value* of such benefit.")

5   (emphasis added); *Gillam*, 167 F.3d at 1278-79 (finding the value to be the bribing party's

6   profits enabled by the bribed official's preferential treatment). Indeed, the Guidelines'

7   commentary provides guidance for this scenario: "A $150,000 contract on which $20,000 profit

8   was made was awarded in return for a bribe; the value of the benefit received is $20,000."

9   USSG § 2C1.1 app. n.2. Thus, the value of the benefit received was the profit attributable to

10  Robles's influence.

11      The government and Probation Department both calculate the value based on the value of

12  Garrido's contract with Klistoff — the government using the contract's lifetime value, the

13  Probation Department submitting the amount actually paid under the contract. These loss

14  values, however, do not fit the Guidelines' paradigm. Garrido's contract may have been a

15  byproduct of the bribery scheme — Klistoff employed Garrido in pursuit of his ultimate goal in

16  the bribery scheme — but it was not the value to be received in return for the payments. That

17  was the waste-hauling contract itself.[7]

18      The government failed to offer evidence of the precise portion of the waste-hauling

19  contract deriving from Robles's influence. Thus, the government failed to prove the value of

20  Robles's aid by clear and convincing evidence.

21      As a result, the Court must use the value of the bribes themselves. USSG § 2C1.1(b)(2).

22  It is undisputed (and well-established in the record) that Klistoff gave $22,898.78 worth of bribes

23  to Robles. That corresponds to a four level increase. *See* § 2F1.1(b)(1)(E).

24  **C.      Range**

25      Robles's criminal history category is II. His base offense level is 10. He is subject to a

26

27  [7]    The evidence showed Garrido received a $3.5 million consulting contract with Klistoff, and

28  Garrido did little to earn it. *See Garrido*, 713 F.3d at 990-91 & n.5. Garrido likely shared some of the profits with Robles, but the government did not establish that amount by clear and convincing evidence.

1    two-level increase as an organizer and leader as well as a four-level increase for the value of the

2    bribes.  His adjusted offense level is therefore 16.  Consequently, Robles's Guidelines range is

3    24-30 months imprisonment.  USSG § 5A.

4    **II.**    **Section 3553(a) Factors**

5          The Court must consider the suggested range, but it is not presumptively reasonable.  *See*

6    *United States v. Carty*, 520 F.3d 984, 995-96 (9th Cir. 2008).  Instead, the guidelines range is a

7    starting point, and the Court considers the factors enumerated in 18 U.S.C. § 3553(a) to ensure

8    the sentence is sufficient but not greater than necessary.  *See Kimbrough v. United States*, 552

9    U.S. 85, 108 (2007).  Any significant departure from the guidelines must be supported by

10    sufficient justification.  *Gall*, 552 U.S. at 46.

11          In a "mine-run" case, the Guidelines reflect Section 3553(a)'s considerations.  *See Rita v.*

12    *United States*, 551 U.S. 338, 351 (2007).  This is not a mine-run case.  An intervening change in

13    the law invalidated some of Robles's convictions by injecting uncertainty into the jury's verdict.

14    This doctrinal change, however, did not alter the culpability of Robles's conduct.  Moreover, the

15    Guidelines do not reflect the severity of Robles's offense, and the suggested sentence would not

16    provide adequate deterrence.

17          First, the Guidelines sentence underestimates the amount of loss.  The Guidelines were

18    "clearly written with the assumption that the amount of loss could be ascertained."  *United States*

19    *v. Hilgers*, 560 F.3d 944, 947 (9th Cir. 2009).  But precise calculation is not always possible, and

20    a Guidelines sentence can therefore underappreciate the seriousness of the offense.  *See id.* at

21    947-48.  Here, the Court could only ascertain with particularity the value of the bribes Robles

22    accepted.  Given the size of the waste-hauling contract — $48 million — the loss calculation

23    almost certainly undervalues the actual loss.  Moreover, Robles's corrupt conduct reached other

24    city projects and involved broader misuse of public funds.  *Garrido*, 713 F.3d at 989-990, 997.

25    Therefore, the loss calculation under the Guidelines does not track the seriousness of Robles's

26    corruption.  *See* 18 U.S.C. § 3553(a)(1); *Hilgers*, 560 F.3d at 947-48 (affirming a sentence

27    almost three times the length of the guidelines because, in large part, the Guidelines did not

28    reflect the loss to the victims).

Second, the Guidelines fail to account for a significant portion of Robles's culpable conduct. The government prosecuted Robles on two different theories of honest services fraud were available. *Skilling* found that only bribery and kickback schemes constituted honest services fraud. 558 U.S at 409-12. So the Ninth Circuit vacated Robles's honest services fraud: because the indictment, instructions, and argument had permitted conviction on either a constitutional or unconstitutional theory, there was insufficient certainty the jury found Robles guilty of a bribery and kickback scheme beyond a reasonable doubt. *Garrido*, 713 F.3d at 996-98.[8] In doing so, the Ninth Circuit did not discount the evidence supporting bribery and kickbacks:

> There is evidence in the record that could support a bribery or kickback conviction. Appellants do not dispute that payment and in-kind contributions were made to the Robles's family and friends, including Garrido. For example, Espinoza testified that Robles instructed him to funnel well over half of the proceeds of his city contract to Robles's sister-in-law.

*Id.* at 997. The Court can consider this evidence. *See United States v. Watts*, 519 U.S. 148, 156 (1997); *United States v. Virrey-Camez*, 585 F. App'x 481(9th Cir. 2014); *United States v. Mercado*, 474 F.3d 654, 656 (9th Cir. 2007); *United States v. Lipman*, 133 F.3d 726, 729-30 (9th Cir. 1998). And the Court agrees with the Ninth Circuit — more than a preponderance of the evidence shows Robles committed honest services fraud even after *Skilling*. *See Garrido*, 713

---

[8]  Robles continually avers that the government only pursued a theory of honest services fraud at trial. That is wrong. The Ninth Circuit said that the government focused on the nondisclosure of conflicts of interest, but the indictment and jury instructions could support either theory. *Garrido*, 713 F.3d at 996-98. And although the government emphasized the failure to disclose theory during closing arguments — perhaps for strategic purposes — it presented evidence supporting both theories during trial. *See id.* at 997-98. Indeed, the Ninth Circuit ultimately reversed the honest services fraud convictions because "it [was] impossible to conclude" the jury's decision was constitutional, not that the jury was only presented with an unconstitutional theory. *Id.* at 996-98. Moreover, Robles's argument is irrelevant: if there is sufficient evidence of criminal conduct, the Court can consider it regardless of whether the government pursued the theory at trial. *See* USSG § 1B1.4 (allowing consideration of any conduct not prohibited by law); *United States v. Mercado*, 474 F.3d 654, 656-58 (9th Cir. 2007) (permitting relitigation of acquitted charges at sentencing); *United States v. Faulkner*, 952 F.2d 1066, 1070-71 (9th Cir. 1991) (discussing impermissible considerations).

1    F.3d at 997.[9]  As a result, the Guidelines range grossly underestimates the extent of Robles's

2    criminal conduct: his corruption ran deeper, the harm to the city's fisk was more severe, and the

3    betrayal of the public's trust was worse than the Guidelines range calculated from the surviving

4    convictions would suggest.  Thus, Robles is responsible for the same culpable conduct animating

5    the Court's original 120-month sentence, and a significant upward departure is necessary to

6    reflect the seriousness of the offense.  *See* 18 U.S.C. § 3553(a); *United States v. Weingarten*, 713

7    F.3d 704, 715-16 (2d Cir. 2013) (affirming a sentence where the district court imposed the same

8    sentence after remand because the reversals of certain convictions did not "reduce[] the extent of

9    the harm legally attributable to the defendant"); *United States v. Guerra*, 463 F. App'x 451, 453

10   (5th Cir. 2012) (imposing a harsher sentence because the guidelines did not account for the

11   defendant's "flagrant abuse of the public trust" even though Section 3B1.3 provided for an

12   adjustment); *United States v. Ausburn*, 362 F. App'x 259, 261-62 (3d Cir. 2010) (finding abuse

13   of the public trust by a public official sufficient to increase a sentence beyond the guidelines

14   range); *United States v. Dominguez*, 951 F.2d 412, 413-16 (1st Cir. 1991) (finding reinstatement

15   of the original sentence permissible despite reversal of some convictions because the "actual

16   conduct the court took into account were the same in both instances"); *United States v. Spano*,

17   411 F. Supp. 2d 923, 938 (N.D. Ill. 2006) (considering defendant's theft of public funds and

18   resulting corruption of city services as under Section 3553(a)).

19       Third, a Guidelines range sentence would not provide adequate deterrence.  Because

20   Robles's conduct evinced extensive and pernicious abuse of his public office, a 24-30 month

21   sentence is insufficient to promote adequate respect for the law.  Corruption — an anathema to a

22   democratic self-government — is far too prevalent.  *See, e.g.*, Matthew J. Parlow, *Revolutions in*

23   *Local Democracy? Neighborhood Councils and Broadening Inclusion in the Local Political*

24   *Process*, 16 Mich. J. Race & L. 81, 86-87 (2010); Aaron R. Petty, *How Qui Tam Actions Could*

25   *Fight Public Corruption*, 39 U. Mich. J.L. Reform 851, 851-53, 857-63 (2006); Alan Vinegrad,

26   *Government Corruption and Civil Rico: Providing Compensation for Intangible Losses*, 58

27

28

---

[9]      Indeed, the evidence is clear and convincing.

13

N.Y.U. L. Rev. 1530, 1530-32 (1983).  Robles solicited and took bribes, gave kickbacks, and misused the authority invested in him by the public.  On the unusual facts of this case, the Guidelines only account for a sliver of the malfeasance supported by the record; the Court, however, cannot ignore Roble's widespread abuses while tailoring his sentence under Section 3553(a).

The Court would be inclined to reimpose the original 120 month sentence because Robles is equally culpable today; however, new considerations render that sentence greater than necessary.  Evidence of post-sentence rehabilitation is relevant to the Court's evaluation of Section 3553(a)'s factors.  *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011).  Robles, to his credit, exhibits indicia of rehabilitation.  He has complied with the terms of his sentence for the past several years.  He has returned to gainful employment.  And he has complied with the terms of his supervised release while on bond.  Given Robles's reintegration into society and his apparent ability to live a law-abiding life, sending him to prison would be excessive at this time.  Moreover, the length of time Robles has already served is substantial, and it is sufficient to deter him and others from committing such offenses.  Therefore, the Court concludes that the amount of time Robles has served — namely, 84 months imprisonment — coupled with 3 years of supervised release will effectuate the purposes of Section 3553(a).[10]

### CONCLUSION

For the foregoing reasons, and in full consideration of the factors laid out in 18 U.S.C. § 3553(a), the Court finds that a sentence of 84 months imprisonment and 3 years supervised release is sufficient but not greater than necessary.

IT IS SO ORDERED.

Dated: March 19, 2015

STEPHEN V. WILSON
United States District Judge

---

[10]   In accordance with the Pre-Sentence Report, the Court finds that Robles has satisfied the restitution previously ordered in this case.